UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HALF MOON VENTURES, LLC, )
    Plaintiff, )
)
v. )
) C.A. No. 18-685-JJM-PAS
ENERGY DEVELOPMENT )
PARTNERS, LLC, and MAARTEN )
REIDEL, )
    Defendants. )

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Half Moon Ventures ("HMV") and Defendant Energy Development Partners ("EDP") entered into a series of agreements to develop renewable energy production facilities in Rhode Island. On September 15, 2014, the parties signed a master agreement, the Membership Interest Purchase and Sale Agreement ("MIPSA"), intended to supply the scaffolding for further agreements related to specific development projects. Section 7.11 of the MIPSA provides to HMV a right of first refusal to invest in and later purchase development projects from EDP. One such project was the Richmond Project, governed by the MIPSA and two project specific contracts, a Services Agreement ("SA") and a Membership Interest Assignment Agreement (MIAA), both dated March 25, 2015. The SA and the MIAA have provisions by which EDP would reimburse HMV for payments made toward the Richmond Project if certain conditions were met. EDP's repayment obligations were

guaranteed by its manager, Co-Defendant Maarten Reidell, who signed a personal guaranty for the Richmond Project in March 2015.

On April 26, 2017, HMV made $634,222 in payments to EDP under the SA and MIAA. HMV alleges that it made these payments relying on an oral modification of the SA that the parties discussed from late 2016 into early 2017. HMV shortly thereafter withdrew from the project and contends it is due a reimbursement under the contracts and Mr. Reidell's guaranty either as written or as orally modified. HMV sued EDP for breach of contract, promissory estoppel, and unjust enrichment. EDP moved to dismiss the claims and, for the following reasons, the Court GRANTS the motion in part and DENIES it in part. ECF No. 15.

I. BACKGROUND

On September 15, 2014, HMV and EDP entered into the MIPSA with the intent of using it as a framework to be amended by future contracts related to specific development projects. ECF No. 1 at 3, ¶ 10. The future projects were called pipeline projects, some of which were already identified at the time of signing. ECF No.1-1 at 31. EDP was to offer HMV a right of first refusal to purchase pipeline projects during the Pipeline Period, which ended on December 31, 2016. *Id.* EDP was also obligated to inform HMV of new pipeline projects on a quarterly basis during the Pipeline Period. *Id.*

On March 25, 2015, HMV and EDP signed the SA as HMV intended to invest in a Pipeline Project called the Richmond Project. *Id.* at 55, 63. The SA has the terms the parties agreed upon to amend and supplement the language of the MIPSA to

2

effectuate the development of the Richmond Project. *Id.* at 56-57. The SA contemplates that HMV would make development advances to EDP, as necessary. *Id.* at 57. Section 7(a) of the SA describes repayment obligations undertaken by EDP:

> If as of December 31, 2016:...(ii) any Development Services Advances are outstanding; then, in either such case, EDP agrees to repay to HMV such amounts in immediately available funds within two Business Days, or (iii) any purchase price has been paid to EDP or its Affiliate under a purchase agreement, but the applicable project has not, prior to December 31, 2016, satisfied the conditions for the Completion of Development Payment...under such purchase agreement, EDP agrees to repay to HMV such amounts in immediately available funds within two Business Days, whereupon the purchase agreement shall be of no further force or effect.

*Id.* at 58. The purchase payments referenced in clause (iii) are outlays that the parties contemplated would be made under an MIAA. *Id.* at 66. Mr. Reidell personally guaranteed EDP's section 7(a) repayment obligations in a document he signed in March 2015 (Reidell Guarantee). *Id.* at 78.

On the same day, HMV and EDP signed an MIAA for the Richmond Project, which called for HMV to make purchase payments to EDP as EDP achieved certain milestones toward Completion of Development. *Id.* at 63, 66. Section 6(b) of the MIAA describes HMV's right to withdraw from the Richmond Project:

> In the event that the Buyer provides notice to Seller that it is withdrawing from the Project, in its sole discretion, which the Buyer may provide at any time prior to the Completion of Development, the Development Services Advances that have been paid to Seller under the Services Agreement, together with any Purchase Price payments made by Buyer under this Agreement prior to the Completion of Development, shall be applied to a future Pipeline Project offered to Buyer by Seller during the Pipeline Period.

*Id.* at 67. The MIPSA and the SA both have a clause saying, "[n]o amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by the parties." *Id.* at 38, 59. The MIPSA, the SA, and the MIAA all have an integration clause. *Id.* at 38, 59, 60, 71.

HMV alleges it was clear to the parties in late 2016 that EDP would not complete development of the Richmond Project by December 31, 2016. ECF No. 1 at 6, ¶ 20. At that time, HMV had only paid $25,475 to EDP as a Performance Guarantee Deposit on December 8, 2015. *Id.* at 7, ¶ 22. HMV asserts, though, that it had invested much time and energy into the Richmond Project and wanted to see it through to completion. *Id.* at 6-7, ¶ 21. Worried that the repayment obligations in section 7(a) of the SA would expire at the end of 2016, HMV alleges that it began discussions with HMV about extending those obligations as the project continued. *Id.* HMV claims these discussions led to an understanding between the parties, reached in late 2016 or early 2017, that the repayment obligations and the Reidell Guaranty would continue until EDP completed development of the project, which EDP estimated would occur by early 2017. *Id.* On April 26, 2017, HMV allegedly made three Purchase Price payments to EDP, totaling $634,222, relying on the discussions between the parties. *Id.* at 7, ¶ 22.

HMV asserts it was convinced by June 2017 that EDP would not be able to bring the Richmond Project to completion. *Id.* at 7-8, ¶ 23. On July 20, 2017, HMV notified EDP by letter of its intention to withdraw from the project and requested reimbursement of the 2017 Purchase Price payments and the 2015 Performance

4

Guarantee Deposit. *Id.* EDP did not refund the money. *Id.* at 8, ¶ 24. Instead EDP sent HMV a letter on August 1, 2017 saying the payments had been credited to HMV for future projects. *Id.* HMV sued for breach of contract, promissory estoppel, and unjust enrichment.

## II. STANDARD OF REVIEW

HMV must allege facts that make its complaint plausible on its face to survive a 12(b)(6) motion to dismiss for failure to state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court first separates factual allegations from legal conclusions. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013). A complaint offering no more than "naked assertion[s] devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The claim must show "more than a sheer possibility that a defendant has acted unlawfully." *Garcia-Catalán v. U.S.*, 734 F.3d 100, 102-03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). If the allegations, taken as true, describe facts sufficient to "raise the right to relief above the speculative level," the complaint is plausible. *Twombly*, 550 U.S. at 555. The Court will indulge all reasonable inferences in favor of HMV. *See Rodriguez-Reyes*, 711 F.3d at 52-53.

When deciding a motion to dismiss, the court is not limited to the facts alleged in the complaint but may take a "common sense" approach to determine what materials may be considered. *See Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc.*, 526 F. Supp. 2d 260, 268 (D.R.I. 2007) (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir.1998)). Furthermore, when the

factual allegations of a complaint are intertwined with and depend on a document of undisputed authenticity, the document "merges into the pleadings." *Id.* (quoting *Beddall*, 137 F.3d at 17).

## III. DISCUSSION

EDP argues that all of HMV's claims fail as a matter of law and must be dismissed. It argues that the contracts are unambiguous, and a plain application of the terms forecloses the remedy sought by HMV in its breach of contract claim. EDP also argues that the quasi-contractual claims advanced by HMV are barred by the existence of a valid contract covering the same subject matter, the ambiguity of the alleged promise between the parties, and the existence of the no oral amendments clause in the three agreements. The Court will consider these arguments about each of HMV's claims.

### A. Breach of Contract

The parties' obligations were defined by the MIPSA, the SA, and the MIAA, all three of which are undisputedly valid contracts. The contracts also remained in full force and effect during the timeline here. HMV alleges an oral modification of the contracts extending the repayment obligations of EDP beyond the timeframe described in the written document. EDP argues that the contracts are not susceptible to oral modification, their terms are clear and unambiguous and, should the Court apply the terms as written, HMV is not entitled to a return of the Purchase Price payments it made to EDP in 2017.

1. Oral Modification

The allegations in the complaint describe a discussion between the parties occurring sometime in late 2016 or early 2017. ECF No. 1 at 6-7, ¶ 21. During the alleged discussion, HMV agreed to continue investing in the Richmond Project if EDP agreed to three conditions. *Id.* First, EDP would extend the repayment obligations in section 7(a) of the SA to payments made after December 31, 2016. *Id.* Second, HMV would keep the right to withdraw from the project at its sole discretion as described in section 6(b) of the MIAA. *Id.* Finally, the Reidell Guaranty would apply to repayment obligations undertaken after December 31, 2016. *Id.* The no oral amendments clause in the contract notwithstanding, EDP allegedly agreed to the terms and the parties continued collaborating on the Richmond Project into 2017. *See id.* at 7-8, ¶ 22, 23.

Parties are generally free to orally modify contracts between them. *See GBM Acquisitions, Inc. v. Adams*, 823 A.2d 1121, 1124 (R.I. 2003). However, when the parties agree beforehand to allow modification of the contract only in writing, the party alleging the modification must present facts showing waiver of the no oral amendment clause. *See Fondedile, S.A. v. C.E. Maguire, Inc.*, 610 A.2d 87, 92 (R.I. 1992). Waiver "must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 62-63 (R.I. 2005) (quoting *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (1991)). Furthermore, a course of conduct may imply

7

waiver of a contractual right if it is "inconsistent with any other intention than to waive it." *Id.*

Here, HMV has alleged a discussion between the parties but has not pointed to any specific act by EDP indicating waiver of the no oral amendment clause. If the Court were to find an alleged discussion between parties is enough to infer waiver of a no-oral-modification clause, it would render all such clauses nugatory. HMV also alleges no course of conduct by EDP that would imply waiver.

### 2. The Contract as Written

Whether a contract is ambiguous is a question of law. *See High Steel Structures, Inc. v. Cardi Corp.*, 152 A.3d 429, 433 (R.I. 2017). To determine whether a contract is ambiguous, the court will look at the document in its entirety and give words their plain, ordinary meaning. *See Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 62-63 (R.I. 2005). A contract is ambiguous only if it is reasonably susceptible to multiple meanings. *See Textron, Inc. v. Aetna Cas. & Sur. Co.*, 638 A.2d 537, 541 (R.I. 1994). When a contract is unambiguous, judicial construction of the documents is at an end and the court simply applies the terms as written. *See W.P. Assocs. v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I. 1994). When a contract is ambiguous, extrinsic evidence may be called upon to clarify the intent of the parties. *See id.*

EDP argues that the repayment obligations in section 7(a) of the SA apply only to payments made before December 31, 2016 and, since the Purchase Price payments were made by HMV in April 2017, EDP is not in breach by refusing to repay those

8

amounts. *See* ECF No. 1-1 at 58 ("If, as of December 31, 2016..."). While this argument is persuasive, as the condition of timing is expressed in section 7(a), such a cloistered reading of the contract over simplifies the intent of the parties. *See Textron*, 638 A.2d at 541 (refusing to look at "isolated phrases in abstraction from the text of the entire document.").

EDP's argument ignores the apparent intent of the parties that payments be made before December 31, 2016. When the contract is viewed in its entirety, a reasonable inference can be made that the SA and the MIAA are premised on the assumption that HMV would make either Service Advance payments or Purchase Price payments in the year and eight months leading up to the December 2016 repayment deadline. A hypothetical here is illuminating. If HMV had made a single Purchase Price payment before the deadline but EDP had not satisfied the Completion of Development requirement in the purchase agreement, EDP would have to return the payment to HMV and the MIAA would be voided. The parties intended the agreement to self-destruct on December 31, 2016 if *any* Purchase Price payments were made but development was not complete. The Court is at a loss to understand how the parties, then, would have intended the agreement to survive if *no* Purchase Price payments were made and development was not complete. Because HMV made no Purchase Price payments until 2017, though, the MIAA survived the self-destruct deadline and the parties are bound by it.

And being bound, the repayment entitlement HMV must turn to is in section 6(b) of the MIAA, which says that upon HMV's withdrawal from the Richmond Project,

> ...any Purchase Price payments made by Buyer under this Agreement prior to the Completion of Development, shall be applied to a future Pipeline Project offered to Buyer by Seller during the Pipeline Period.

ECF No. 1-1 at 67. EDP argues that this clause forecloses the possibility that HMV is entitled to repayment of the Purchase Price payments and EDP was following the contract when, in August 2017, it credited the payments to other projects. However, it does not stretch the bounds of reason to infer that application of payments to future pipeline projects would have to occur within the Pipeline Period as it is defined in the MIPSA. The MIAA is designed to self-destruct on December 31, 2016, the same date that the Pipeline Period ends according to the MIPSA. ECF No. 1-1 at 31, 58. It follows that the parties, aware of the Completion of Development deadline, foresaw HMV withdrawing from the project before the deadline passed and the MIAA self-destructed. In that case, it would be feasible for EDP to apply the payments to "to a future Pipeline Project offered to Buyer by Seller during the Pipeline Period." *Id.* at 67.

But since HMV made only Purchase Price payments and withdrew from the Richmond Project in 2017, the application of section 6(b) of the MIAA is murky. EDP claims crediting the 2017 payments to other projects bought by HMV is consistent with the terms of section 6(b) since the other projects were offered to HMV during the Pipeline Period. It is just as reasonable, though, to conclude that in 2017, after the

10

Pipeline Period had closed, it was impossible to apply section 6(b) as written. How can 2017 payments be applied to "future" pipeline projects if the Pipeline Period ended in 2016? This question is given further weight by section 7(a) of the SA, voiding the MIAA and section 6(b) contained within it on December 31, 2016 if *any* Purchase Price payments had been made. *Id.* at 58.

At this early stage in the proceedings, it is not clear that HMV is entitled to repayment of the April 26, 2017 Purchase Price payments under the contract as written. But neither is it clear that the relief HMV seeks is foreclosed. Accepting the facts in the complaint and the contracts as true and making all reasonable inferences in favor of HMV, the Court finds that HMV has made out a plausible claim for breach of contract and EDP's motion to dismiss this claim is DENIED.

B. Unjust Enrichment

To make out a claim for unjust enrichment, HMV must plausibly allege that (1) it conferred a benefit to EDP; (2) EDP appreciated the benefit; and (3) EDP "accepted the benefit under such circumstances that it would be inequitable for [it] to retain the benefit without paying the value thereof." *S. Cty. Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 210-11 (R.I. 2015). Generally, a valid contract governing the same subject matter precludes a claim for unjust enrichment. *See High Rock Westminster St. LLC v. Bank of Am., N.A.*, No. C.A. 13–500 S, 2014 WL 3867699, at *2 (D.R.I. Aug. 6, 2014) (citing *Tantara Corp. v. Bay Street Neighborhood Ass'n, LLC*, No. NC-11-55, 2012 WL 4848704, at *5 (R.I. Super. Oct. 4, 2012)). But if the benefit is conferred under a contract and the contract is breached, voidable, unclear, or

11

otherwise flawed, a party under contract may recover under a theory of unjust enrichment. *See id.*

EDP urges the Court to dismiss the unjust enrichment claim because the parties were bound to an express remedy described in an unambiguous contract. Simply put, no claim can lie for unjust enrichment because the MIAA and the SA state how Purchase Price payments would be treated upon HMV's withdrawal from the Richmond Project. This argument, though, belies the complexity of the agreements when read together. HMV's unjust enrichment claim is supported by the same uncertainty surrounding repayments under section 6(b) of the MIAA that supports the breach of contract claim. Moreover, HMV alleges in its complaint that EDP used the payments in dispute to finish the Richmond Project and sell it to a third party. ECF No. 1 at 10, ¶ 42. The Court is satisfied that HMV has alleged a plausible claim for unjust enrichment and DENIES EDP's motion to dismiss this claim.

C. Promissory Estoppel

To assert a plausible claim for promissory estoppel, HMV must allege facts to support (1) a clear and unambiguous promise; (2) reasonable and justifiable reliance on the promise; and (3) detriment to the promisee, caused by his or her reliance on the promise. *See Cote v. Aiello*, 148 A.3d 537, 547 (R.I. 2016) (citing *Fillipi v. Fillipi*, 818 A.2d 608, 626 (R.I. 2003)). When there is "written, actual notice contradicting [an] oral promise, such notice deems any reliance on that oral promise unreasonable." *Fillipi*, 818 A.2d at 627.

HMV has not pleaded enough facts to plausibly claim reasonable reliance on the promise allegedly made by EDP. HMV and EDP are sophisticated commercial parties that reached a series of complex agreements at arm's length. The agreements they reached all have provisions forbidding oral amendment of the contracts as well as integration clauses. As mentioned above, HMV has not presented facts in its complaint to show waiver of these provisions by EDP and a later oral modification of the contract. When a contract governs the subject matter in dispute a claim for promissory estoppel cannot stand. *See Doe v. Brown University*, 166 F. Supp. 3d 177, 196 (D.R.I. 2016) (dismissing a claim for promissory estoppel when a valid contract governed the obligations of the parties); *see also Fillipi*, 818 A.2d at 627 (finding reliance on a promise unreasonable when contradicted by a prior written document of which the party had notice); *First Tee Capital Advisors, Ltd. v. Caron*, No. CIV.A. PC 99-0311, 2003 WL 22389819, at *9 (R..I. Super. Sept. 22, 2003) (granting judgment to defendant when there was no indication the contract governing the parties and contradicting a later oral promise had been modified). Thus, EDP's motion to dismiss the promissory estoppel claim is GRANTED as to EDP and Mr. Reidell.

D.  The Reidell Guaranty

Mr. Reidell personally guaranteed EDP's repayment obligations in section 7(a) of the SA in a document signed in March 2015. Even if the repayment obligations undertaken by EDP in the SA and MIAA as written are unclear as to Purchase Price payments made in 2017, it is too early in the proceedings to dismiss Mr. Reidell from

13

the breach of contract and unjust enrichment claims. If any liability of Mr. Reidell is premised on a theory of oral modification of the contracts or promissory estoppel, that claim is dismissed.[1] Mr. Reidell, like EDP, will be held accountable only to the contract as written.

IV. CONCLUSION

The Court is satisfied that HMV has made out plausible claims against EDP for breach of contract and unjust enrichment. Accordingly, the Court DENIES the motion to dismiss those claims against EDP and Mr. Reidell. The Court also holds that HMV has not alleged a plausible claim against EDP and Mr. Reidell for promissory estoppel and the motion to dismiss that claim is GRANTED.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

May 20, 2019

---

[1] EDP argues that the Reidell Guaranty, governed by Illinois law, is not subject to oral modification. ECF No. 17 at 10-11. Because the Court finds that HMV cannot make out a plausible claim for promissory estoppel against EDP, which necessarily underlies Mr. Reidell's liability under the same theory, there is no need to reach this question.